# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | CASE NO. 8:98CR120 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| GREGORY POOR, | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's motion to produce grand jury transcripts (Filing No. 99) filed through counsel. The motion was supported by a brief and evidence (Filing Nos. 100, 103). Upon the Court's order, the government filed a response (Filing No. 108).

## FACTUAL BACKGROUND[1]

On May 21, 1998, the grand jury indicted the Defendant, Gregory Poor, in an eight-count Indictment. The government summarized the Indictment as follows:

> Count I of the indictment charged Poor with conspiracy to violate the Federal Food, Drug, and Cosmetic Act (FFDCA), primarily by acts of misbranding and adulteration. Count I charged a violation of Title 18, United States Code, Section 371, with the purpose of the conspiracy being the violation of Title 21, United States Code, Subsection 301 et seq. Counts II through IV charged Poor with substantive offenses regarding the sale, distribution, holding for sale, and introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Section 331(a) of the FFDCA. Counts V through VII charged Poor with substantive offenses regarding the sale, distribution, holding for sale, and introduction of adulterated drugs into interstate commerce, in violation of Title 21, United States Code, Section 331(a) of the FFDCA. The substance charged in the indictment as being a misbranded and adulterated drug was Gamma

---

[1]Because many of the documents filed in this case predated the Court's CM/ECF filing system, the documents are not readily available. The government's response included a thorough statement of the facts, and therefore the Court has relied in part on the government's statement of procedural facts.

Hydroxy Butyrate (GHB).  The conspiracy count and other charges brought under the FFDCA alleged the element of intent to defraud or mislead thus bringing about the enhanced felony penalties pursuant to 21 U.S.C. § 333(a)(2).  Finally, Count VIII of the indictment charged Poor with witness tampering, in violation of Title 18, United States Code, Section 1512(b).

(Filing No. 108, at 1-2 (citation omitted).)

On March 10, 2000, Poor appeared before the Honorable Thomas M. Shanahan and pleaded guilty to Count I of the Indictment. Under the plea agreement, Poor admitted to the conduct described in Counts II through VII of the Indictment and agreed that those Counts would be considered as relevant conduct when determining the appropriate sentencing guideline range.  The Presentence Investigation Report detailed the offense conduct as follows:

> Gamma Hydroxybutyric Acid (GHB) is a street drug but, until recently, not a controlled substance.  GHB is relatively easy to make with recipes for the manufacture of GHB on the Internet.  GHB is often times used by young people, mostly between the ages of 18 and 25, and induces a sense of euphoria and intoxication. Body-builders use GHB for its purported anabolic effect.  Because GHB is generally homemade, it comes in a clear liquid and is often times stored in clear water bottles.
>
> GHB is not approved by the Food and Drug Administration for commercial marketing or use in the United States.  Therefore, a black market has developed for its use. Consumption of GHB has been documented to cause severe medical consequences to include extreme nausea, sudden and uncontrollable sleep, seizures, coma and death.
>
> From 1992 through October, 1995, Poor and others did manufacture and package for sale and distribution GHB intended for use as a drug.  The GHB involved in this case was manufactured, for the most part, in Kansas City, Missouri, and on various occasions would be transported to the Omaha-Council Bluffs area by either Greg Poor or others acting on his behalf.
>
> The GHB was mislabeled meaning there were no labels bearing the name of the product, its manufacture, or place of manufacture.  There was no label identifying the product as a drug, providing directions for its use or bearing warnings as to dosage, usage or consequences.  The GHB was generally sent from Missouri in a soda bottle bearing no label at all.

Starting in 1992 through October, 1995, Poor distributed GHB between Missouri, Iowa and Nebraska.

Poor met Mike Matthews in late 1991, and in 1992 told Matthews how to use GHB and provided Matthews with GHB. Poor was aware of the adverse consequences of taking GHB as he was treated on May 15, 1994, at a hospital in Kansas City, Missouri, after ingesting an overdose of GHB. The emergency room physician counseled Poor as to the dangers of using GHB.

Late in 1994, Jeff Saye met Greg Poor. Poor introduced Saye to GHB. In addition to the GHB, Poor sold injectable steroids to Saye. Saye paid for the steroids by both cash and check.

In March or April of 1995, Poor was introduced to Scott Moller. Moller was a manufacturer of GHB. On or about June 20, 1995, Poor arranged for Jeff Saye to purchase $90.00 worth of GHB (two liters) for Poor from Scott Moller in Kansas City.

In June, 1994, Poor and Mick Ellis were accompanied by Anthony Tamayo in a drive around town. The three of them ingested GHB. On this occasion, Poor indicated that the GHB would help Ellis, 'bulk up' and define muscle mass if taken before a workout.

On or about July 4, 1995, Poor sold a quantity of liquid which he indicated was GHB to Robby Magers. Shortly thereafter, on or about July 17, 1995, Poor caused approximately two one gallon containers of unreacted GBL (a precursor to GHB), whose contents were touted by Scott Moller as GHB, to be sent from Kansas City, Kansas to Omaha, Nebraska by U.P.S.

On or about September 23, 1995, Poor purchased approximately six liters of a liquid which contained GBL from Scott Moller. He paid approximately $270.00 in cash for the GBL. On October 17,1995, Poor arranged for Scott Moller to take two liters of a liquid that contained GBL, give it to Steven Barnes in Kansas City, Missouri. At about that same time, Poor sent a check in the amount of $190.00 to Scott Moller in Kansas City, Kansas for the purchase of what Poor believed was GHB. The substance however was GBL.

On October 26, 1995, Scott Moller shipped four liters of GHB from Kansas City, Kansas to Poor in Omaha, Nebraska by means of U.P.S.

On or about October 28, 1995, Poor brought a quantity of liquid touted as GHB from Omaha, Nebraska to Council Bluffs, Iowa. The liquid was contained in a one gallon glass container. This is how the container was shipped from Moller to Poor by means of U.P.S.

On October 28th or 29th, Mick Ellis and Jamie Moffit drank GHB from a clear glass one gallon container that was in a car they have identified as Anthony Tamayo's. Ellis' cousin, Jennifer White, met up with Ellis and others at the Sweetwater Tavern, in Council Bluffs, Iowa. Ellis was at the bar as was Poor and some other individuals. They ingested the GHB from a clear plastic bottle in the parking lot. White was among several people who ingested GHB from this bottle. A number of people returned to a party, where they noticed that Jennifer White had passed out in the back of a car. Ellis looked at White, and believing that she was intoxicated left her alone in the back of the car with Greg Poor who appeared to be equally intoxicated. A friend of Ellis and Whites, Jennifer Giles, decided to drive Poor back to Omaha. When they arrived at Poor's house, Giles was unable to wake up White. She could not determine whether White was breathing or whether she had a heartbeat. They proceeded to Immanuel Hospital where they arrived at approximately four in the morning and where Jennifer White was pronounced dead on arrival.

An autopsy was performed on Jennifer White. The alcohol content in her body was .06, below the legal intoxication level for driving. However, White had a significant level of GHB in her bodily fluids. It has been determined that the GHB was the cause of death.

(PSR, ¶¶ 17-31.)

With respect to a Defendant's version of the offense, the PSR stated:

The defendant's version was to have been received by the Probation Office on March 10, 2000. To date, no written information has been received from the defendant or counsel. However, Mr. Poor informed this officer that he began taking steroids in 1989, continuing the use of these substances until 1992 when he started taking GHB as an alternative to the steroids. He stated he would obtain GHB from Steve Ray until 1995 when a friend of the defendant's introduced him to Scott Moller in Kansas City. Subsequently, Moller would send GHB via the U.S. Mail to the defendant in Omaha and he would share this substance with some of his friends. He stated the night of Jennifer White's death he had not ingested any GHB. He had ceased the use of GHB earlier in 1995 as he was having trouble sleeping without using it. After the death of Jennifer White, he decided to never use GHB again. The night of her death, he stated he had been imbibing alcohol, and subsequently passed out. He denied providing any GHB to Ms. White, and believes her cousin, Mick Ellis, provided her the GHB which ultimately led to her death. However, he settled the wrongful death suit with Jennifer White's father, Oral White, in order to avoid a lengthy trial. That case had been filed in Pottawattamie County District Court in Council Bluffs, Iowa (Case #: 73720), and was filed against Gregory S. Poor, Krohn Enterprises, Inc. d/bla Sweet Water Bar, John Doe I, John Doe II and John Doe III. The case was

dismissed with prejudice on November 23, 1999, upon payment of $5,000 from Mr. Poor to Oral W. White, Jr., Administrator of the Estate of Jennifer Lynn White.

(PSR, ¶ 32.)

Poor was in a sentencing guideline range of 8 to 14 months based on a total offense level of 11 and placement in Criminal History Category I. The PSR reflected the statutory maximum sentence of 5 years. The Addendum to the PSR reflects that Poor objected to the PSR insofar as it included upward adjustments for more than minimal planning and the offense's involvement with conscious or reckless risk of serious bodily injury. Judge Shanahan heard the objections[2] and denied them. On May 30, 2000, after granting the government's motion for a downward departure based on substantial assistance, the district court sentenced Poor to 4 months imprisonment and 3 years supervised release. Poor filed a direct appeal. Although Poor now contends his appeal was "pro se," according to Eighth Circuit Court of Appeals records he was represented throughout his appeal by attorney Glenn Shapiro. The Eighth Circuit affirmed the district court's conviction and sentence in a per curiam opinion, holding: 1) Poor could not raise the issue of an involuntary plea for the first time on appeal; 2) Poor's intended use of gamma hydroxy butyrate ("GHB") constituted evidence that the substance was a drug and not a food supplement; and 3) the Indictment was not duplicitous, multiplicitous, or tainted by investigative misconduct. *United States v. Poor,* 2000 WL 1341540, at *1 (8th Cir. Sept. 19, 2000). Poor did not file a motion under 28 U.S.C. § 2255. Poor has completed his sentence. On November 11, 2011, he filed the instant motion and supporting brief through counsel.

---

[2]The government represented that Poor stated at sentencing that he was objecting to the conclusions, and not the facts, set out in the PSR. (Filing No. 108, at 11.)

## DISCUSSION

In his motion to produce grand jury transcripts, Poor claims that the substance he had was GBL rather than GHB. In support of his claim, Poor has filed three affidavits. The affidavits, however, do not state he was involved with GBL as opposed to GHB. Rather, the affidavits refer generally to false statements made to the grand jury.

The decision whether to release grand jury transcripts is within the Court's discretion. Grand jury transcripts may be released only upon a showing of a "particularized need." *United States v. Broyles,* 37 F.3d 1314, 1318 (8th Cir. 1994).

Evidence exists indicating that false statements were made before the grand jury. (Filing No. 103-1; Filing No. 100, at 3 (quoting the sentencing transcript).) However, there has been no showing in any reference to the false statements that those statements related to the type of substance with which Poor was involved. Moreover, the record simply does not support Poor's claim that he was involved with GBL and not with GHB. Poor pleaded guilty to Count I, which involved GHB. Through the change of plea process, in completing the plea documents and while in court for his change of plea hearing Poor agreed while under oath that his involvement was with GHB. He never objected to the factual portions of the PSR that addressed his involvement with GHB. His current motion attempts to argue issues already addressed on appeal. No motion was ever filed under § 2255.[3] Poor has not shown a "particularized need" for the grand jury transcripts, and his proffered need for disclosure of the transcripts is outweighed by the recognized need for grand jury secrecy.

---

[3] The Court does not imply that his claim regarding GBL could be raised in a § 2255 motion or, if raised, that the claim would have been successful.

Accordingly,

IT IS ORDERED that the Defendant's motion to produce grand jury transcripts (Filing No. 99) is denied.

DATED this 17th day of January, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge